IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THOMAS DOUGLAS, as Administrator of the Estate of SEBERA GAYLE DOUGLAS, Deceased, ) ) ) ) | |
| Plaintiff, ) ) | CIVIL ACTION NO.: |
| vs. ) ) | 2:06-cv-188-WKW-SRW |
| TMA Forest Products Group, etc., et al., ) ) | |
| Defendants. ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANTS' TO MOTION TO COMPEL

COMES NOW the Plaintiff and responds to Defendants Pactiv Corporation and Louisiana Pacific Corporation' Motion to Compel filed and served on about June 28th, 2006 stating as follows:

The Defendants seek to obtain witness statements in possession of the Plaintiff's counsel that include the counsel's mental thoughts and impressions. All witnesses who provided statements are represented by Plaintiff's counsel and make similar claims. Incorporate by reference are affidavits of Plaintiff's counsel W. Eason Mitchell (Exhibit "A") and Gregory A. Cade (Exhibit "B") in compliance with the local rules. More so, the information sought violates an executed settlement agreement entered between both parties prior to an unsuccessful mediation where this information, hereafter referred to as the Florala Mediation CD, was used to show the extent of damage as determined by some former employees, all of which are clients of Plaintiff's counsel. Now, the Defendants

assert that they will experience undue hardship, even before an instituted scheduling order by this Court, if they are denied access to the Florala Mediation CD. This information in the hands of defense counsel would serve only as a harassment tool in witness depositions scheduled to begin the week of July 11th, 2006.

This court should not be swayed by a disguised attempt to classify this information as discoverable. The Florala Mediation CD and the information contained therein, is work product. Generally, a party seeking protected work product must overcome a high hurdle in order to gain such protected information. Fed. Rules Civ. Procedure 26 (b) (3). An attorney is afforded a shelter wherein he may analyze and prepare his client's case and protect his mental impressions of the same. *U.S. v Nobles*, 422 U.S. 225 (1975). The work product doctrine is broader than the attorney-client privilege. Id. The US Supreme Court has addressed the type of discovery that the Defendants attempt to force as early as 1947. In *Hickman v. Taylor*, 329 U.S. 495 (1947), Justice Murphy, writing for the majority noted that:

> Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer.

In more recent years, Courts have improved upon the protection of witness statements gathered by attorneys in anticipation of litigation. The work product doctrine has been designed to promote the adversary system by protecting an attorney's trial

preparation. Rule 26 (b) (3) place a two-fold burden on the party seeking the production of work product of an adversary:

(1) a showing of undue hardship and (2) a substantial need. *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464 (11th Cir. 1984). The Defendants have failed to show either of these prongs. Further, the Defendants have not let the natural course of discovery run prior to making this demand for production by the Plaintiff. See *In re: International Systems and Controls Corp*, 693 F.2d 1235 (5th Cir. 1982). ("[D]iscovery of work product will be denied if a party can obtain the information he seeks through deposition.").

The Defendants argue that seeking such information stems from the concept of undue hardship where the witnesses may suffer from an inability to recall because of faulty memory or where the witness may be hostile or reluctant to provide accurate prior statements. Plaintiff's counsel demonstrated to the Court that the sometime lengthy normal course of discovery might cause some key witnesses to be unavailable if some form of expedited discovery was not conducted. The interest to do such was not intended to open Pandora's box and give opposing counsel the right to seize upon an opportunity to harass apart from the purpose of this Court's order to preserve certain key witness testimony. Furthermore, the need to "quickly prepare" for depositions after more than one year of document sharing and pleading filings, including affidavits that are the more accurate of the statements made against each Defendant, is simply an undermining of this Court by seeking such information under such pretenses offered to this Court. The Defendants have not and cannot present any reason to this Court that can clearly identify

3

an undue hardship causing a prejudice that cannot be obtained by properly deposing each deponent where the gravity of such information is determined anyway.

The Defendants misconstrue the latitude afforded to a party under Federal Rule of Civil Procedure 26 (b)(1). Plaintiff concede Rule 26(b)(1) does allow for the *discovery* of the statements in question. Plaintiff has not denied such statements exist and indeed has supplied the names of those making the statements in question. What Rule 26(b)(1) does not allow for is the *production* of the statements. Under Rule 26(b)(1), at the very least, Defendants are entitled to what is found in the remaining portion of the Rule which is the "…identity and location of person having knowledge of any discoverable material." Fed.R.Cv.P. 26(b)(1). Plaintiff has satisfied the requirements of this Rule by setting forth the names of the potential witnesses offering such statements. Rule 26(b) (1) makes no requirement of a party to turn over the actual statement of potential witnesses; merely the identity and location of such witnesses is sufficient.

Further, while Defendants have reached outside of this jurisdiction in an attempt to find law to support their theory in this motion, an ample body of case law on the subject exist in our own 11th Circuit. As recently as the year 2000, the Court affirmed the standard to use in both criminal and civil (emphasis added) proceedings when the question of work product arose. *Williams v. Taylor*, 221 F.3d 1177 (11th Cir. 2000). In *Williams,* the court opined that compelling reasons exist against a rule requiring work product be turned over to the opposing side. *Williams* at 1182. The 11th Circuit made it clear in *Cox v Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994), that work product such as that Defendants seek, here bears a protection of absolute

4

immunity. The 11th Circuit, borrowing language from its sister 8th Circuit in *Cox*, simply but absolutely stated that work product is sacred.

Almost as an afterthought, Defendants cite *S.R.R. Co. v. Lanham* in support of their claim that the statement in question should be turned over by Plaintiff's counsel. *Lanham*, is a weak leg for which the Defendants base their argument. The facts in *Lanham* bear little resemblance to the instant case. In *Lanham*, facts show that the counsel for the Plaintiff sought production of material and filed an affidavit with the court detailing its client's financial inability to obtain the material in question and the fact that the statements were made by employees of the defendant in all likelihood with apprehension. Given the marked difference in the facts in *Lanham* compared to the instant case, it is plain to see that *Lanham* is not applicable as a guide for the Court in deciding the merits of this case because the availability of the witness and their wiliness to offer testimony via deposition is controlling. In addition, the parties have agreed and already scheduled discovery depositions with ample time prior to the preservation depositions ever taking place. Interestingly enough however, the Lanham court did believe much like the 11th Circuit in that "...Rule 34's good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule." *Lanham* at 126, quoting *Schalagenhauf v. Holder* 379 U.S. 104, 1881 (1964).

Defendants will have ample opportunity to examine the words of specific witnesses without such intrusive actions sanctioned by the Court compelling the Florala Mediation CD or the information contained within.

5

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff pray this Honorable Court will deny Defendants' motion to compel privileged information constituting work product in the above styled action.

**RESPECTFULLY SUBMITTED** on this the 7th day of July 2006.

> /s/ Gregory A. Cade
> Gregory A. Cade
> Environmental Litigation Group, PC
> Post Office Box 550219
> Birmingham, Alabama 35255
> Phone: 205-328-9200
> Fax:    205-328-9456

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2006, I electronically filed the foregoing Plaintiff's Response to Motion to Compel with the Clerk of the Court using the ECF system and sent notification of such filing to the following:

H. Thomas Wells, Jr.
John A. Earnhardt
Dennis R. Bailey
R. Austin Huffaker
Edwin Bryant Nichols
Erin O'Kane Scott
John C. Berghoff, Jr.
Matthew C. Sostrin
Mark R. Ter Molen

> /s/ Gregory A. Cade
> Gregory A. Cade

# Exhibit "A"

Case 2:06-cv-00188-LES-CSC   Document 68-2   Filed 07/24/2006   Page 8 of 14
Case 2:06-cv-00188-LES-CSC   Document 63   Filed 07/07/2006   Page 48 of 60
Case 2:06-cv-00189-LES-CSC   Document 59   Filed 07/06/2006   Page 1 of 5

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MELANIE CHAMBERS, Who Sues
By and Through Her Mother and Next
of Friend Gail Tatum,                                    PLAINTIFF

VERSUS                              CIVIL ACTION NO. 2:06CV83-WKW

PACTIV CORPORATION and
LOUISIANA-PACIFIC CORPORATION,                           DEFENDANTS

AFFIDAVIT

STATE OF MISSISSIPPI
COUNTY OF LOWNDES

My name is W. Eason Mitchell and I am an attorney licensed to practice law in the State of Alabama. I am providing this affidavit in support of an opposition to a motion to compel discovery of statements which motion was made by defendants in the above styled case and companion cases. This affidavit is intended to comply with the guideline to Civil Discovery Practice in the Middle District of Alabama under the M.D. Ala. LR. Guideline 1, Section I.

Page 1 of 5

Case 2:06-cv-00188-LES-CSC   Document 68-2   Filed 07/24/2006   Page 9 of 14
Case 2:06-cv-00188-LES-CSC   Document 63   Filed 07/07/2006   Page 49 of 60
Case 2:06-cv-00189-LES-CSC   Document 59   Filed 07/06/2006   Page 2 of 5

I have represented the plaintiffs or their decedents since October, 2004. I also represent approximately 800 or more claimants who make claims similar to the plaintiffs for different and/or varying amounts of damages. Approximately 200 of these clients have indicated an intention to file suit in this Court in the near future in the event their claims are not addressed by other means.

It is my custom to video record statements of many of my clients for my own use in litigation case evaluation and for use in mediations and/or settlement discussions. I also video record witnesses for the same reasons, as well as a substitute for written statements in the event of subsequent surprise testimony from the witness during trial.

I personally recorded scores of client and witness interviews between October, 2004, and December, 2005, which were relevant to expected damage and liability issues in this case. I also employed my daughter, Alli Mitchell, to record and interview clients on damage issues only for the purpose of presentation at a mediation that took place prior to the filing of this case. Recordings were selected, edited for time restraints and electronically stored on a laptop computer. Those statements, in the exact

Case 2:06-cv-00188-LES-CSC   Document 68-2   Filed 07/24/2006   Page 10 of 14
Case 2:06-cv-00188-LES-CSC   Document 63   Filed 07/07/2006   Page 50 of 60
Case 2:06-cv-00189-LES-CSC   Document 59   Filed 07/06/2006   Page 3 of 5

format used at mediation in December, 2005, have been transferred to a CD which I refer to as the Florala Mediation CD.

The Florala Mediation CD begins with a written notice that it is considered privileged both for work product and attorney client purposes and presented only under an agreement that these privileges were not waived. A copy of the statement, taken directly from the program, which must be viewed before any statements appear, is attached hereto as Exhibit "A." I have never allowed defendants to see or hear the Florala Mediation CD without first obtaining an oral agreement that it would not constitute a waiver of any privilege. The parties have also entered into a written agreement to engage in the settlement discussions that included the material on the Florala Mediation CD, which agreement is attached as Exhibit "B." Four of the witnesses on the Florala Mediation CD are Buck Roberts, Roy Ezell, Carlton Dukes and Jacky Partridge. These are the same four individuals who have supplied affidavits which were exhibits to the plaintiff's opposition to the defendants' motion to dismiss or for a more definite statement filed in this Court.

Case 2:06-cv-00188-LES-CSC   Document 68-2   Filed 07/24/2006   Page 11 of 14
Case 2:06-cv-00188-LES-CSC   Document 63   Filed 07/07/2006   Page 51 of 60
Case 2:06-cv-00189-LES-CSC   Document 59   Filed 07/06/2006   Page 4 of 5

The subject of these persons' statements on the CD is the same as the subject of their affidavits. The CD does not indicate that copies were made and it has been consistently treated as confidential privileged work product within our office. No one, except for production staff, office staff, attorneys who represent Plaintiffs or Defendants who agreed to confidentiality have been allowed to view the material.

_____
W. Eason Mitchell

Sworn to and subscribed before me this 29th day of June, 2006.

_____
Notary Public

My Commission Expires:

9-25-2009



Page 4 of 5

## CERTIFICATE OF SERVICE

I, W. Eason Mitchell, hereby certify that on July 6, 2006, I electronically filed the foregoing *Affidavit* with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Douglas Sheppard Arnold, Esq.
Dennis R. Bailey, Esq.
John C. Berghoff, Jr., Esq.
John A. Earnhardt, Esq.
R. Austin Huffaker, Jr., Esq.
Orlyn O. Lockard, III, Esq.
Edwin Bryan Nichols, Esq.
Laura Ellison Proctor, Esq.
Erin O'Kane Scott, Esq.
Matthew C. Sostrin, Esq.
Mark R. Ter Molen, Esq.
H. Thomas Wells, Jr., Esq.
Bernard Taylor, Sr., Esq.

This 6th day of July, 2006.

/s/ W. Eason Mitchell
W. Eason Mitchell

## Warning

1. This presentation is copyrighted with all rights reserved by The Colom Law Firm, LLC.

2. Presentation of this material is made in accordance with confidentiality agreements. All material in this presentation is confidential.

3. This material is provided in the context of settlement negotiations and for that purpose only. This presentation shall not constitute any waiver of attorney-client privilege. All material contained in this presentation is the work product of The Colom Law Firm, LLC, and is presented without waiver of any rights.

EXHIBIT A

Case 2:06-cv-00188-LES-CSC   Document 68-2   Filed 07/24/2006   Page 14 of 14
Case 2:06-cv-00188-LES-CSC   Document 63   Filed 07/07/2006   Page 54 of 60
Case 2:06-cv-00189-LES-CSC   Document 59   Filed 07/06/2006   Page 2 of 5

DEC-15-04  18:52   FROM-COLOM LAW FIRM                    +                      T-875  P.003/056  F-360

# TOLLING AGREEMENT

This Tolling Agreement (the "Agreement") is made and entered into by and between Louisiana-Pacific Corporation, a Delaware corporation ("LP") and the clients of the Colom Law Firm listed in Exhibit A, which is attached hereto and incorporated herein (the "Clients"). Hereinafter, LP and the Clients are individually referred to as "Party" or collectively referred to as "Parties."

WHEREAS, the Clients allege that they have been injured or damaged due to exposure to creosote, pentachlorophenol, or chromated copper arsenic (the "Chemicals") allegedly released into the soil, water, and air from LP's Lockhart, Alabama facility (the "Facility") and that LP has liability for such releases;

WHEREAS, LP denies that it has any liability with respect to the foregoing allegations;

WHEREAS, the Parties have expressed an interest in entering into a standstill and tolling agreement governing the claims that the Parties potentially could assert against each other relating to the alleged release of the Chemicals from the Facility for the purpose of resolving such claims without litigation; and

NOW, THEREFORE, in consideration of the covenants herein and the mutual benefits to be derived therefrom, LP and the Clients hereby agree as follows:

1.     The Clients and LP agree that all statutes of limitations applicable as of the Effective Date to any rights, claims, causes of action, counterclaims, crossclaims, and defenses relating to the alleged release of the Chemicals from the Facility which either the Clients could assert against LP or LP could assert against the Clients as of the Effective Date shall be tolled for the period between the Effective Date and the Termination Date (the "Tolling Period"). The Tolling Period shall be excluded from all computations of any applicable statutes of limitations. If any lawsuit is commenced against LP relating to the alleged release of the Chemicals from the Facility during the Tolling Period by any of the Clients or persons who were formerly Clients, then this paragraph shall be void in its inception as to such Clients or former Clients, as if this Agreement had never been executed, unless the Parties otherwise agree in writing.

2.     The persons executing this Agreement on behalf of the Clients have full authority to agree and do agree that no action will be commenced against the LP by any of the Clients during the Tolling Period.

EXHIBIT B